## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

*In re*:           :

**JOSE R. VILLAVICENCIO,**    **Bankr. Case No. 2:19-52861**

    **Debtor.**        **Chief Judge John E. Hoffman, Jr.**

             :

**MYRON N. TERLECKY,**
**TRUSTEE,**

    **Plaintiff,**   :

           **Case No. 2:22-cv-03593**
  **v.**          **Judge Sarah D. Morrison**

           **Bankr. Adv. Pro. No. 2:21-02019**

**SOUTH GERMAN VILLAGE LLC,**  **Chief Judge John E. Hoffman, Jr.**
***et al.*,**        :

    **Defendants.**

## <u>OPINION AND ORDER</u>

This matter is before the Court on Defendants South German Village, LLC
("SGV") and Argous LLC's Motion to Withdraw the Reference and Transfer These
Proceedings to the District Court. (Mot., ECF No. 2.) Plaintiff Myron Terlecky, the
Chapter 7 Trustee, opposes. (Opp., ECF No. 3.) For the reasons below, the Motion is
**DENIED.**

## I. BANKRUPTCY COURT PROCEEDINGS

In May 2019, Jose Villavicencio filed for Chapter 7 bankruptcy protection.[1] (Bankr. Case No. 19-52861.) The Trustee filed this adversary proceeding in the Bankruptcy Court on April 30, 2021, naming SGV and Argous (collectively, "the LLCs") and other entities[2] as defendants in his Complaint for Substantive Consolidation and/or Turnover of Property of the Estate. (Bankr. Adv. Pro. No. 2:21-02019, Bankr. Compl., ECF No. 1.) The Trustee sets forth four causes of action against the LLCs, including alter ego (count one) and substantive consolidation (count two). (*Id.* ¶¶ 31–43.) The Trustee alleges that Mr. Villavicencio disregarded corporate formalities when operating the LLCs and operated the real estate for his personal benefit so the Trustee is the beneficial owner of the real estate. (*Id.* ¶¶ 25–30.)

Mr. Villavicencio's Schedule A/B in his bankruptcy filings indicates that he owns a 5% interest in SGV and a 5% interest in Argous. (*Id.* ¶¶ 6, 9.) Public records show that together, the LLCs collectively own 32 real estate properties in Franklin County, Ohio. (*Id.* p. 12.)

The Trustee also alleges that "[a]t the meeting of Creditors, the Debtor testified that he and SGV are '[o]ne and the same.'" (*Id.* ¶ 17.) "The Debtor ignored corporate formalities and deposited all rents in bank accounts solely in the name of [SGV]. The Debtor used the SGV bank account for his own personal benefit,

---

[1] The Court is familiar with Mr. Villavicencio's bankruptcy, having denied Mr. Villavicencio's bankruptcy appeal. (Case No. 2:22-cv-0918.)

[2] The Trustee refers to the LLCs and other entities as the "Debtor's Entities." (Bankr. Compl. ¶ 11.)

including travel expenses and payment of legal fees to his attorney." (*Id.* ¶ 30.) Attached to the Complaint is an affidavit from Joseph Miccio, attesting that Mr. Villavicencio "formed [the LLCs] for himself as bogus entities to avoid having the properties listed in his name personally." (*Id.* p.15, ¶ 4.) Mr. Miccio states that he has known Mr. Villavicencio for over 20 years. *Id.* p.14, ¶ 2.)

On count one, the Trustee asks for declaratory judgment "determining that the Debtor's Entities are the alter ego of the Debtor and that the assets of the Debtor's Entities are property of the Debtor's bankruptcy estate." (*Id.* ¶ 46a.) On count two, the Trustee seeks "[j]udgment ordering substantive consolidation of the Debtor's estate with the assets of the Debtor's Entities pursuant to 11 U.S.C. § 105(a)." (*Id.* ¶ 46b.)

About a year and a half after the Trustee filed the adversary proceeding, the LLCs filed their Motion to transfer the proceedings to this Court. (Mot.)

## II. WITHDRAWAL OF THE REFERENCE

The LLCs move the Court to withdraw the reference, arguing that the Trustee's first claim for alter ego is a state statutory claim and his second for substantive consolidation, although rooted in bankruptcy, has no statutory authority. (Mot. PageID 30.) The Bankruptcy Court lacks authority to enter a final

judgment on the claims, the LLCs contend, and thus the reference should be withdrawn. (*Id.*)

### A.     Bankruptcy Jurisdiction Background

This Court has summarized the interplay between 28 U.S.C. § 1334, 28 U.S.C. § 157, and *Stern v. Marshall*, 131 S.Ct. 2594 (2011), which guide the analysis:

> Bankruptcy jurisdiction only exists by congressional grant of subject-matter jurisdiction. *See* 28 U.S.C. §§ 1334(a), (b), and (e). Jurisdiction over bankruptcy cases under Title 11 of the Bankruptcy Code is vested exclusively in the district courts. 28 U.S.C. § 1334(a). But, through the Bankruptcy Amendments and Federal Judgeship Act of 1984 . . . , Congress established a division of labor between the district courts and the bankruptcy courts. [*Exec. Benefits Ins. Agency v. Arkison,* 573 U.S. 25, 33 (2014).] . . . .

> To that end, Congress created 28 U.S.C. § 157. Section 157 is not a jurisdictional provision; rather, it defines what are and are not core claims. *See In re Leslie Fay Cos., Inc.*, 212 B.R. 747, 773 (Bankr. S.D.N.Y. 1997) (citation omitted) ("The classification of a proceeding as core or non-core does not determine the jurisdiction of a bankruptcy court, but instead relates to a determination of whether the court may enter a final order or judgment or whether it may only issue findings of fact and conclusions of law upon which the district court enters a final order upon *de novo* review"). Bankruptcy courts are entrusted with answering the core, non-core question in the first instance. 28 U.S.C. § 157(b)(3) ("The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11"). If the claim is core, the bankruptcy court is empowered to adjudicate and enter final judgment on the claims. 28 U.S.C. § 157(b)(1); *see Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 670 (2015). If a claim is non-core but "otherwise related to a case under title 11," the bankruptcy court may still preside over the claim and do everything but enter final judgment and conduct a jury trial absent the parties' consent. 28 U.S.C. § 157(c)(1), (e); *see Stern*, 564 U.S. at 475, 131 S.Ct. 2594 (explaining the divergent procedural path following the bankruptcy court's core, non-core analysis). Bankruptcy courts that handle non-core claims—like a United States Magistrate Judge—"shall submit proposed findings of fact and conclusions of law to

4

the district court" for the district court to review *de novo*. 28 U.S.C. § 157(c)(1).

*Harker v. Webb*, No. 3:21-CV-22, 2021 WL 4125437, at *2 (S.D. Ohio Sept. 9, 2021) (Newman, J.).

In *Stern*, the Supreme Court held that non-Article III bankruptcy judges lack "constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim," even if the counterclaim is a statutory core proceeding. 131 S.Ct. at 2620. Put another way, "Article III prevents bankruptcy courts from entering final judgment on claims that seek only to 'augment' the bankruptcy estate and would otherwise 'exis[t] without regard to any bankruptcy proceeding." *Wellness*, 575 U.S. 665 at 673. And the Sixth Circuit has elaborated on the *Stern* Court's holding:

> When a debtor pleads an action under federal bankruptcy law and seeks disallowance of a creditor's proof of claim against the estate . . . the bankruptcy court's authority is at its constitutional maximum. 131 S.Ct. at 2617–18. But when a debtor pleads an action arising only under state-law, . . . or when the debtor pleads an action that would augment the bankrupt estate, but not "necessarily be resolved in the claims allowance process[,]" 131 S.Ct. at 2618; then the bankruptcy court is constitutionally prohibited from entering final judgment. *Id.* at 2614.

*Waldman v. Stone*, 698 F.3d 910, 919 (6th Cir. 2012).

After *Stern*, there was confusion among lower courts as to how to treat *Stern* claims, i.e., "statutory core proceedings that do not stem from the bankruptcy itself or would not necessarily be resolved in the claims allowance process." *Emerson v. Treinish*, No. 1:13-MC-52, 2014 WL 2807481, at *3 (N.D. Ohio June 20, 2014) (citations omitted). Many courts held that the bankruptcy courts could treat *Stern* core claims as non-core proceedings and propose findings of fact and conclusions of

law under 28 U.S.C. § 157(c)(1), yet the plain language of the statute applies only to non-core proceedings. *Id.* The Supreme Court answered the conundrum in *Executive Benefits*: § 157(c) "permits *Stern* claims to proceed as non-core." 573 U.S. at 36–37.

Section 157(d)—the subsection of § 157 that provides district courts with the authority to withdraw the reference—is a two-sentence statute. The first sentence provides for permissive withdrawal: "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." The second sentence provides for mandatory withdrawal, stating that the district court "shall, on timely motion of a party, . . .withdraw a [bankruptcy] proceeding if the court determines that resolution of the proceeding requires consideration of title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." The LLCs do not claim that mandatory withdrawal applies.[3] (*See generally* Mot.)

The Bankruptcy Code does not define "cause" as used in the first sentence of § 157(d). So district courts have considered many factors in determining whether "cause" exists, including: (1) whether the proceeding is core or non-core; (2) whether it is legal or equitable; (3) the efficient use of judicial resources; (4) prevention of forum-shopping; and (5) the effect of the ruling on uniformity in administering bankruptcy law. *Emerson*, 2014 WL 2807481, at *3. Courts also consider a party's request for jury trial. *Id.* (citations omitted); *see also Sergent v. McKinstry*, 472 B.R.

---

[3] Mandatory withdrawal is "reserved only for those cases where substantial and material consideration of the non-bankruptcy federal statutes is necessary for the resolution of the proceeding." *In re Kuhlman Diecasting Co.*, 152 B.R. 310, 312 (D. Kan. 1993).

387, 404 (E.D. Ky. 2012); *In re Oasis Corp.*, No. 2:08-cv-288, 2008 WL 2473496, at
*1 (S.D. Ohio June 18, 2008).

"[W]hether a proceeding is core or non-core is the most important factor in
deciding a motion to withdraw reference." *Nat'l Century Fin. Enters., Inc., v. Great
Am. Ins. Co.,* No. 2:04–CV–908, 2005 WL 6949755, at *2 (S.D. Ohio July 5, 2005)
(citations and quotation marks omitted). Furthermore, permissible withdrawal of
the reference is not intended to be "an escape hatch" from bankruptcy court into the
district court. *Harker*, 2021 WL 4125437, at *2.

With this background, the Court turns to the cause factors and the parties'
arguments.

### B.    Core or Non-Core

The LLCs argue that the Trustee's alter ego and substantive consolidation
claims are non-core. (Mot. PageID 31–32.) They contend alter ego liability is a state-
law claim and while substantive consolidation is "a creation of the bankruptcy
court," it is not rooted in bankruptcy but "is merely a thinly veiled reverse piercing
the corporate veil action." (*Id.* PageID 31.) The Trustee responds that both claims
are core because they arise in a bankruptcy proceeding or under Title 11. (Opp.,
PageID 44.)

#### 1.    Alter Ego

Whether an alter ego claim is properly characterized as core is a murky issue.
Without much case law support, the LLCs summarily argue the Trustee's alter ego
claim is a non-core claim based on state law. (*See generally* Mot.) The Trustee
replies that alter ego claims can be considered core or non-core depending on the

7

circumstances, but here, the claim is core. (Opp. PageID 46) (citing *Bakst v. Smokemist, Inc. (In re Gladstone,* 513 B.R. 149, 156–57 (Bankr. S.D. Fla. 2014)). The Trustee contends that where "an alter ego claim is brought pursuant to the argument that property held by non-debtor defendants 'is and always has been beneficially owned by the debtor,' the alter ego claim is considered to arise in the bankruptcy proceeding or arise under Title 11, as it is a determination of the property of the estate under 11 U.S.C. § 541." (*Id.*) (citing *In re Gladstone*, 513 B.R. at 156–57). But "where an alter ego claim is brought to augment the estate, such as when the claim is based on alleged fraud, the claim is merely related to the bankruptcy proceeding because the trustee is basing his claim on what '*should* be held to satisfy the claims of creditors of the estate.' (*Id.*) (citing *In re Gladstone*, 513 B.R. at 156–57). The Trustee asserts that the alter ego claim here is more similar to the former because the property of LLCs and Mr. Villavicencio have "always been the same." (*Id.*)

Indeed, the extent of a bankruptcy court's power to "bring property within the estate has turned, in large part, on whether the property was in the actual or constructive possession of the debtor—and thus the bankruptcy court—at the time the debtor filed for bankruptcy." *Reed v. Nathan*, 558 B.R. 800, 809–10 (E.D. Mich. 2016). "Where the debtor did possess the property, the bankruptcy courts have been permitted to adjudicate *all* disputes concerning title to the property—including claims of ownership by third parties—and to order that the property be surrendered to the estate." *Id*. So where an "alter ego claim alleges that assets within [the

8

debtor's] actual or constructive possession belong to his estate," that claim "stems not from any independent source of law but 'from the bankruptcy itself.'" *Id.* at 820.

The record is too undeveloped to determine whether the LLC's assets are within Mr. Villavicencio's actual or constructive possession. On one hand, the Complaint alleges Mr. Villavicencio owns only 5% of each LLC. (Bankr. Compl. ¶¶ 6, 9.) The parties do not clarify who owns the other 95%. On the other, the Trustee offers that Mr. Villavicencio: testified that he and SGV were one in the same (*id.* ¶ 17); ignored corporate formalities and deposited all rents in bank accounts solely in the name of SGV (*id.* ¶ 30); used the SGV bank account for his own personal benefit (*id.*); and used the LLCs to avoid having the properties listed in his name personally (*id.* p.15).

The alter ego claim appears to be more core than non-core in nature, but the record in front of the Court is not robust enough to make such a determination.

### 2. **Substantive Consolidation**

The Trustee's substantive consolidation claim is based on his alter ego theory, so the claims are intertwined. (*See* Bankr. Compl.) Generally, however, "[s]ubstantive consolidation is a judicially created doctrine, stemming from the Court's equitable powers under § 105 of the Bankruptcy Code, that treats separate entities as one, pooling their assets into a common fund that can be used to satisfy the liabilities of both entities." *In re Daniels*, 641 B.R. 165, 191 (Bankr. S.D. Ohio 2022) (Hopkins, J.) (citing *Huntington Nat'l Bank v. Richardson (In re Cyberco Holdings, Inc.)*, 734 F.3d 432, 438–39 (6th Cir. 2013)) (additional citations omitted); 28 U.S.C. § 105(a). Courts have found substantive consolidation to be a core claim,

and the bankruptcy court thus has constitutional authority to enter final judgment as to substantive consolidation. *See In re Daniels*, 641 B.R. at 172–73 (explaining that because "the issue of substantive consolidation both 'stem[ ] from the bankruptcy itself,' [*Stern*, 131 S.Ct. at 2618], this Court has the constitutional authority to enter a final judgment in these adversary proceedings."); *SE Prop. Holdings, LLC v. Stewart (In re Stewart)*, 571 B.R. 460, 463–64 (Bankr. W.D. Okla. 2017) (holding that the court has constitutional authority to enter a final judgment in an action for substantive consolidation); *Yaquinto v. Ward (In re Ward)*, 558 B.R. 771, 777–78 (Bankr. N.D. Tex. 2016) (same).

The LLC's reliance on *In re Julien Co.* does not persuade otherwise. (Mot. PageID 35); *see* 120 B.R. 930, 931 (Bankr. W.D. Tenn. 1990). The LLCs cite *Julien* for the proposition that "[t]he substantive consolidation of a non-debtor into a debtor based upon alter ego liability is not a core proceeding." (Mot. PageID 35.) But the Court does not read this case from the Western Division of Tennessee (non-binding precedent on this Court) so broadly.

The *Julien* trustee sought to substantively consolidate the assets and liabilities of the corporation debtor's estate with the assets and liabilities of a non-debtor's personal estate. *In re Julien Co.*, 120 B.R. at 931. The *Julien* Court found the substantive consolidation was non-core because the *Julien* trustee was acting on behalf of the corporate debtor and attempting to get control over all of the individual's assets, "whether they [were] related to [the corporate debtor] or not." *Id.* at 934. The *Julien* Court distinguished its facts from a case in which an

10

individual debtor exerted control over a corporation to render the corporation an alter ego of the individual because "that result simply recognizes that the corporate assets were in reality assets of the individual debtor." *Id*. The facts here resemble the distinguished scenario.

The core versus non-core analysis favors returning this matter to the Bankruptcy Court.

### C.   Legal or Equitable and Jury Trial Request

Both alter-ego and substantive consolidation are equitable doctrines. *See In re Daniels*, 641 B.R. 165, 191 (Bankr. S.D. Ohio 2022) (Hopkins, J.); *Skyworks, Ltd. v. Centers for Disease Control & Prevention*, 542 F. Supp. 3d 719, 723 (N.D. Ohio 2021), *appeal dismissed,* No. 21-3563, 2021 WL 4305879 (6th Cir. Sept. 21, 2021) (explaining declaratory judgment is an equitable remedy). Suits involving equitable rights do not trigger the Seventh Amendment right to a jury trial. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989).  These factors weighs in the Trustee's favor.

### D.   Efficient Use of Judicial Resources and Uniformity in Administering Bankruptcy Laws

The Bankruptcy Court has been handling Mr. Villavicencio's bankruptcy since 2019, and this adversary proceeding was filed in the Bankruptcy Court on April 30, 2021. (Bankr. Compl.) The Trustee brought the proceeding not only against the LLCs, but also against five other defendants that the Trustee alleges are the "Debtor's Entities" with the LLCs. (*Id.* ¶ 11.) The Trustee brings the

substantiative consolidation and alter ego claims against all of the Debtor's Entities, even though only the LLCs filed this Motion. (*Id.* ¶¶ 31–43.)

The Bankruptcy Court is better equipped to handle matters like this— particularly where the record needs developed—and it would be inefficient for this Court to take over at this stage. *See Harker*, 2021 WL 4125437, at *3. Chief Judge Hoffman is intimately familiar the details of Mr. Villavicencio's Chapter 7 proceeding and related adversary proceeding, having been handling them since 2019. The Chief Judge also already considered and denied a motion to dismiss for lack of jurisdiction. (Bankr. Adv. Pro. No. 2:21-02019, Bankr. Compl., ECF No. 29.) This Court would be learning about the Debtor's Entities for the first time. There are also concerns about uniform administration of bankruptcy laws given only two of seven of the Debtor Entities brought this Motion, and LLCs seek to withdraw only two of four related claims.

These factors also weigh in the Trustee's favor.

### E.    Prevention of Forum-Shopping

The Court does have concerns about forum-shopping. Courts have recognized that "maintaining the reference prevents forum shopping," where "*Stern v. Marshall* has become the mantra of every litigant who, for strategic or tactical reasons, would rather litigate somewhere other than the bankruptcy court." *In re Lehman Bros. Holdings Inc.*, 532 B.R. 203, 215 (S.D.N.Y. 2015). While the record before this Court is slim with facts for determining whether withdraw is appropriate, and there is still work to be done by the Bankruptcy Court, forum-shopping concerns support denying the Motion.

### F. *Stern*

There is no *Stern* issue with the substantive consolidation claim, as explained *above* in Section II.B.1. The LLCs argue throughout their Motion that the Trustee's alter ego claim is based on state law triggering *Stern*, but the Bankruptcy Complaint does not mention state law and the Trustee's claim could derive from bankruptcy law. *See In re Gladstone,* 513 B.R. at 156–57. But even if the Bankruptcy Court ultimately finds the alter ego claim to be non-core or to be a *Stern* claim, the Bankruptcy Court should hear the proceeding and submit proposed findings of fact and conclusions of law. The existence of a *Stern* claim does not prevent a bankruptcy court from hearing a matter. *Exec. Bens.*, 573 U.S. at 35–36. When a claim is identified as a *Stern* claim, such a finding invalidates the application of § 157(b); § 157(c)(1) is applied to determine whether the bankruptcy court may adjudicate the claim as a non-core claim if it is related to a case under Title 11. *Id.* So *Stern* concerns do not change the Court's determination that this matter should not be withdrawn.

## III. CONCLUSION

The Motion to Withdraw the Reference is **DENIED.** This matter is returned to the Bankruptcy Court.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**